IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**GENE EDWARD MCCUTCHEON**                                              **PLAINTIFF**

**V.**                              **CASE NO. 3:23-CV-3041**

**JAIL ADMINISTRATOR HETTIE PARKER,**
Searcy County Detention Center (SCDC);
**JAILER/DISPATCHER JIM HENRY, SCDC;**
and **JAILER ANTONIO MARTINEZ**                                          **DEFENDANTS**

## OPINION AND ORDER

This is a civil rights action filed by Plaintiff Gene Edward McCutcheon, who proceeds *pro se* and *in forma pauperis* on claims arising from his incarceration in the Searcy County Detention Center ("SCDC") from March 28, 2023, to March 23, 2024. Mr. McCutcheon contends that Defendants Hettie Parker, Jim Henry, and Antonio Martinez should be held individually liable under 42 U.S.C. § 1983 for: (1) denying Mr. McCutcheon certain heart medications, which caused him to suffer chest pains; (2) denying him access for two weeks to his "latitude communicator," a medical device that reads his pacemaker and sends the results to his cardiologist; (3) failing to transport Mr. McCutcheon to an appointment with his cardiologist on June 12, 2023; and (4) refusing to provide him with medical care and treatment for a large hernia that grew in size during his incarceration and at times caused him severe pain.

On January 22, 2025, the Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas, considered Defendants' Motion for Summary Judgment (Doc. 31) and filed a Report and Recommendation ("R&R") (Doc. 46). In Magistrate Judge Ford's opinion, Defendants Henry and Martinez are entitled to qualified immunity on Mr. McCutcheon's second, third, and fourth claims above but must stand trial

1

on his first claim for the denial of heart medication. Magistrate Judge Ford further recommends that Defendant Parker stand trial for all claims asserted against her in her individual capacity and that the official capacity claim against Searcy County also proceed to trial.

On February 10, 2025, Defendants collectively filed Objections to the R&R (Doc. 50), which prompted this Court to review the entire record *de novo*. *See* 28 U.S.C. § 636(b)(1). There are four objections. First, Defendants contend they are all entitled to summary judgment on all pending claims because there is insufficient proof that Mr. McCutcheon suffered more than a *de minimis* physical injury. Second, Defendants maintain there are no genuine, material disputes of fact as to whether they were deliberately indifferent to Mr. McCutcheon's needs regarding the administration of heart medication. Third, Defendants contend they are entitled to qualified immunity on all claims the R&R does not dismiss. And fourth, they assert there is insufficient proof to permit Mr. McCutcheon's official capacity claim to proceed to trial.

In evaluating the objections below, the Court is mindful of the legal standard it must apply on summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a).

## I.   OBJECTION ONE: NO PROOF OF PHYSICAL INJURY

Defendants' first argument is that all claims should be dismissed because "there is no verifying medical evidence" to show Mr. McCutcheon suffered anything more than *de minimis* physical injury, which is not recoverable under the Prison Litigation Reform Act ("PLRA"). The Court disagrees. The R&R's discussion of the "Physical Injury Requirement" cogently explains why Defendants are not entitled to summary judgment

on this basis. See Doc. 46, pp. 26–27. In brief, there is a genuine, material dispute of fact as to whether the severity of Mr. McCutcheon's chest pain and related cardiac symptoms caused more than *de minimis* injury and whether pain caused by Mr. McCutcheon's untreated hernia was more than *de minimis*.[1] The objection is therefore **OVERRULED**.

## II.  OBJECTION TWO: FAILURE TO ADMINISTER HEART MEDICATION

Next, Defendants object to the Magistrate Judge's recommendations about McCutcheon's heart medication claim. Defendants claim they faithfully administered "*seven* different heart medications" to Mr. McCutcheon during the course of the year he spent at the SCDC, which, to them, proves they were not deliberately indifferent to his serious heart condition. (Doc. 50, p. 5 (emphasis added)). Unfortunately for Defendants, Mr. McCutcheon's jail medical records prove no such thing.

As the R&R noted, the medical records Defendants provided the Court are a mess. They are incomplete, disorganized, and prove next to nothing about what medications Mr. McCutcheon was administered. For starters, the records do not show that *any* medications were provided daily. At most, they show that medications were ordered in Mr. McCutcheon's name from Allcare Pharmacy on various dates. A careful read of the records actually supports Mr. McCutcheon's claim that SCDC personnel allowed him to run out of two heart medications—Entresto and Amiodarone—on at least one occasion, even though Defendants at that point were aware that if Mr. McCutcheon missed his medications, he could suffer serious consequences, including a stroke, a heart attack, or even death.

---

[1] Though Defendants describe the hernia as a "pre-existing condition," a genuine dispute of material fact exists as to whether the condition dramatically *worsened* during the year Mr. McCutcheon spent at the SCDC due to Defendants' deliberate indifference.

3

Mr. McCutcheon's written requests to jail medical staff for help with his medical conditions are not presented in any particular order, and they most often contain no written response—either from the jail nurse or any of the jailers. As the R&R notes, the Court received "no records indicating the dates on which McCutcheon was seen by [Nurse] Elkin, or with any type of chart or record of Elkin's diagnosis or orders"; and though "[a] couple of McCutcheon's requests have handwritten notes made on them, . . . the notes are unsigned." *Id.* at p. 6.

The Court is well persuaded that genuine, material disputes of fact exist as to whether Defendants were deliberately indifferent to Mr. McCutcheon's needs regarding the administration or misadministration of medication for his heart condition. This objection is therefore **OVERRULED**.

### III. OBJECTION THREE: ENTITLEMENT TO QUALIFIED IMMUNITY

Defendants' next objection is to the denial of qualified immunity. In their view, the medical records, though "difficult to read," prove Defendants were not deliberately indifferent to Mr. McCutcheon's serious medical needs. (Doc. 50, p. 7). Once again, Defendants are wrong. If anything, the medical records support Mr. McCutcheon's claims of deliberate indifference and point to a systemic failure to train jail officers on how to appropriately treat inmates with serious medical conditions in accordance with their constitutional rights. If Mr. McCutcheon's medical records are any indication of the SCDC's practices, the jail *does not* systematically or routinely:

- maintain daily logs documenting the medications and dosages that jail staff administer to inmates;

- record the dates that inmates are evaluated by jail medical staff;

- record the diagnoses and medical orders made by jail medical staff;

4

- respond in writing to prisoners' medical requests;

- maintain a system to assure that inmates' medications are refilled on time;

- maintain a system for scheduling inmates' outside doctor's appointments;

- record important information about outside medical appointments, including date, time, provider's name, and clinic or hospital; and

- maintain medical records from outside medical appointments, including diagnoses and orders.

The Court agrees with the Magistrate Judge that there are genuine issues of material fact as to whether Defendants violated Mr. McCutcheon's clearly established constitutional rights. First, it is undisputed that Mr. McCutcheon had a constitutional right to adequate medical care, and this clearly established right extended to access to prescribed medications. *See, e.g.*, *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 795–96 (8th Cir. 2006) ("[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference."). Mr. McCutcheon's medical records do not prove he was administered life-sustaining heart medications daily, routinely, or otherwise; in fact, the records do not even show which medication he received on a given day—or a given week. Second, it is clearly established that an inmate has the right to treatment for serious and painful conditions and that "[d]elay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically serious or painful in nature." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1055 (8th Cir. 1989). A jury must therefore decide whether Defendants were deliberately indifferent to Mr. McCutcheon's serious cardiac needs and to his worsening hernia, and whether such indifference caused Mr. McCutcheon to suffer needless pain and suffering. This objection is **OVERRULED**.

## IV. OBJECTION FOUR: LEGAL BASIS FOR OFFICIAL CAPACITY CLAIM

Defendants' final objection is that the SCDC's medical policies are in no way objectionable and certainly do not constitute a widespread pattern or custom of unconstitutional conduct. Once again, Defendants point to the seven different medications Mr. McCutcheon received at one time or another—as though the number of medications alone somehow absolves them of a claim of deliberate indifference. They point to the fact that he was seen by an in-house nurse practitioner once a week—though the medical records do not establish this. And they note that he was taken to the hospital for a cardiac emergency on at least one occasion and not simply ignored. But the fact that Mr. McCutcheon *survived* a year at the SCDC does not immunize the jail from possible official capacity liability. As Magistrate Judge Ford correctly observed:

> Searcy County's act in contracting with [Nurse] Elkin to provide medical care at the facility does not relieve the County of its constitutional obligation to provide medical care. *See West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the [county] of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the [county's] prisoners of the means to vindicate their Eighth Amendment rights"). While the record contains no evidence about the training Defendants received, and their failure to follow their own policies does not necessarily equate to a constitutional violation, given the lack of records regarding the administration of medication to McCutcheon and his medical care or treatment, a jury could reasonably conclude that the Defendants were inadequately trained in the provision of medical care and that this lack of training resulted in the violation of McCutcheon's constitutional rights. Searcy County's failure to implement a policy to make sure inmates with serious medical needs are promptly treated may also establish a failure to provide adequate medical care. *See, e.g., Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006) (denying summary judgment regarding County's failure to implement policies for responding to medically unstable patients, for prompt assessment if treatment is refused, and for transfer of medically unstable patient).

*Id.* at pp. 25–26. Accordingly, this objection is also **OVERRULED**.

_____

The Court agrees with the R&R's thorough and well-reasoned analysis in all respects. Therefore, **IT IS ORDERED** that the R&R (Doc. 46) is **ADOPTED IN ITS ENTIRETY**. Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED IN PART AND DENIED IN PART** as follows: (1) the Court preserves for trial Mr. McCutcheon's claim that Defendants Henry and Martinez were deliberately indifferent to his serious medical needs regarding medication distribution; but all other claims against Henry and Martinez are **DISMISSED** due to qualified immunity; (2) all claims against Defendant Parker are preserved for trial; and (3) Mr. McCutcheon's official capacity claim is preserved for trial.

A case management order will issue shortly setting pretrial deadlines and a trial date.

**IT IS SO ORDERED** on this 11th day of March, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE